IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| JOE HAND PROMOTIONS, INC, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | No. 2:23-2752-SHL-cgc |
| ) | |
| TAVARIS JONES and WILLIS WHITE, JR., ) | |
| d/b/a STICKS X STONES, ) | |
|     Defendants. ) | |

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

Before the Court is Plaintiff Joe Hand Promotions, Inc's ("Joe Hand") Motion for Default Judgment, filed April 8, 2024. (ECF No. 17.) For the reasons explained below, Plaintiff's Motion is **GRANTED IN PART AND DENIED IN PART** and default judgment is entered against Defendants Tavaris Jones and Willis White, Jr., d/b/a Sticks X Stones in the amount of $5,615.

**BACKGROUND**

On December 1, 2023, Joe Hand—a commercial distributor and licensor of sporting events—filed this suit against Jones and White, who are the alleged owners and operators of the commercial establishment known as Sticks X Stones. (ECF No. 1, ECF No. 17-1 at PageID 42.) Joe Hand alleges that Stick X Stones broadcasted three pay-per-view programs, including undercard boxing bouts and commentary, without Joe Hand's authorization, despite Joe Hand being the exclusive commercial domestic distributor of the programs. The programs are: 1) Gervonta Davis vs. Isaac Cruz ("Program 1") on December 5, 2021; 2) Jake Paul vs. Tyron Woodley II ("Program 2") on December 18, 2021; and 3) Ultimate Fighting Championship®

270: Ngannou vs. Gane ("Program 3"), on January 22, 2022 (collectively the "Programs"). (ECF No. 1 at PageID 1.)

Joe Hand discovered Defendants' unauthorized exhibition when auditor Gavin A. Turner visited Stick X Stones on December 5, 2021. (ECF No. 19-1 at PageID 86.) He did not pay a cover charge to enter the establishment. (Id.) Turner observed three flat screen television sets that were showing Program 1, specifically the undercard bouts pitting Sergiy Derevyanchenko agsint Carlos Adames and Sebastian Fundora against Sergio Garcia. (Id.)

Turner estimated that Sticks X Stones has a capacity of approximately eighty to ninety people. (Id.) During his ninety minutes there, Turner observed between eighteen and twenty-five patrons. (Id.) Plaintiffs Rate Card for the Programs sets out the fee to sublicense each Program based on the capacity of the establishment. (ECF No. 17-3 at PageID 79.) An establishment with a capacity of seventy-six to 100, such as Sticks X Stones, was required to pay a sublicense fee of $750 to broadcast Program 1, $950 to broadcast Program 2, and $1,095 to broadcast Program 3. (Id.) Sticks X Stones did not obtain a sublicense from Joe Hand to broadcast the Programs and thus paid no fee. (ECF No. 17-1 at PageID 41.)

The Complaint pleads violations of federal communications laws, 47 U.S.C. §§ 553 and 605, and seeks statutory damages under either § 553 or § 605. (ECF No. 1 at PageID 5.) However, in the instant Motion, Joe Hand indicates that it is only seeking damages under § 605. It seeks $16,770 in total damages: $2,795 pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) and $13,975 pursuant to 47 U.S.C. § 605(e)(3)(C)(ii). It also seeks $515 in costs and $1,500 in attorneys' fees. Despite Plaintiff's timely and effective service,[1] Defendants have not appeared

---

[1] The record reflects that White and Jones were personally served pursuant to Federal Rule of Civil Procedure 4(e)(2)(A) on December 15, 2023, and February 10, 2024, respectively. (ECF Nos. 8, 11.)

or participated in this case in any way. The Clerk entered default against White on March 14, 2024, and against Jones on April 1, 2024. Plaintiff filed this motion seeking default judgment on April 8, 2024.

## ANALYSIS

I. **Default Judgment**

Plaintiff argues that default judgment is appropriate because the requirements of Federal Rule of Civil Procedure 55 have been satisfied. The Court agrees. As stated above, Defendants have not responded nor appeared in this case despite effective service.

Federal Rule of Civil 55 establishes a two-step process for obtaining a default judgment "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). First, "the clerk must enter the party's default." Id. When a default is entered against a defendant, "that party is deemed to have admitted all of the well pleaded allegations in the Complaint, including jurisdictional averments." Joe Hand Promotions, Inc. v. Pat's Snack Bar, LLC, No. 6:19-CV-67-REW, 2020 WL 1923178, at *2 (E.D. Ky. Apr. 21, 2020) (quoting Ford Motor Co. v. Cross, 441 F. Supp. 2d 837, 846 (E.D. Mich. 2006)). Here, the Clerk has entered default (ECF No. 16), thus, the first step is satisfied.

The second step requires that Plaintiff "apply to the court for a default judgment," which Plaintiff has also done. See (ECF No. 17); Fed. R. Civ. P. 55(b)(2). However, even where a clerk has entered default and a plaintiff has applied for default judgment, it nevertheless falls to a court "to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." Anderson v. Johnson, 194 F.3d 1311 (Table), No. 98-1931, 1999 WL 1023753, at *2 (6th Cir. Nov. 4, 1999) (internal citation

omitted).  Thus, the Court must evaluate whether Plaintiff's allegations establish that Defendants pirated the Programs in violation of 47 U.S.C. § 605.

Sections 553 and 605 of Title 47 of the United States Code prohibit the interception of communications over cable systems and radio communications, respectively.  Joe Hand Promotions, Inc. v. RPM Mgmt. Co. LLC, No. 2:09-CV-553, 2011 WL 1043560, at *2 (S.D. Ohio Mar. 18, 2011); Joe Hand Promotions v. Easterling, No. 4:08CV1259, 2009 WL 1767579 (N.D. Ohio June 22, 2009) (Section 605(a) "prohibits unauthorized interception of satellite communications" whereas § 553 "governs the unauthorized interceptions of cable service").  A plaintiff may only recover under one section.  RPM Mgmt., 2011 WL 1043560, at *3.  Here, Plaintiff has elected to proceed under § 605(a), which provides for higher penalties than § 553, and "which courts have held apply to encrypted cable programming from satellite transmissions, such as the [Programs] at issue in this dispute."  Id. at *2.

Section 605 provides a private right of action against violators by which a plaintiff can seek statutory damages and attorneys' fees and costs.  To establish a violation, a plaintiff must show that the defendant did three things: (1) intercepted the transmission of the program in question; (2) did not pay for the right to receive the transmission; and (3) displayed the program in question to commercial patrons.  Joe Hand Promotions, Inc. v. Truong, No. 3:19-CV-00701, 2020 WL 7014303, at *3 (M.D. Tenn. May 20, 2020) (citing Joe Hand Promotions, Inc. v. Prevot, No. 8:19-cv-651, 2019 WL 4694530, at *2 (M.D. Fla. Sept. 26, 2019)).

The Court finds that Plaintiff has sufficiently alleged each element.  First, Plaintiff sufficiently alleges that Defendants intercepted the transmission the Programs.  Plaintiff relies on screenshots of Stick X Stones advertising the Programs on Facebook and Instagram.  (ECF No. 17-2 at PageID 62–69.)  Turner also attended the broadcast of Program 1.  (ECF No. 19-1.)

4

Joseph P. Hand, III, President of Joe Hand, states in an affidavit that Defendants did not have a license to broadcast any of the Programs. (ECF No. 17-3 at PageID 80.) In addition, Hand explains that Plaintiff's programming "is not and cannot be mistakenly, innocently, or accidentally intercepted," because the transmission of the Programs was electronically coded or scrambled and only lawfully broadcast with the correct electronic decoding equipment and satellite coordinates necessary to receive the signal or if a satellite provider was notified to unscramble the reception. (Id. at PageID 80–81.) Plaintiff has sufficiently established that Defendants intercepted the transmission for the Programs unlawfully.

Plaintiff also sufficiently alleges that Defendants did not pay for the right to receive the transmission. Hand explains that Plaintiff distributed a confidential list of authorized customers to participating auditing and law enforcement agencies, and that Defendants were not on that list. (Id. at PageID 79–80.)

Finally, Plaintiff sufficiently alleges that Defendants broadcasted the Programs to commercial patrons. Turner visited Sticks X Stones on the evening of December 5, ordered a beverage, and watched part of Program 1. Social media posts show that Sticks X Stones advertised that they would be showing Programs 1 and 2, as well as other fights. The post regarding Program 1 states "Fight Night at Sticks! After brunch, opening back up at 7pm for the big fight between Gervonte 'Tank' Davis and Issac Cruz!" (ECF No. 17-2 at PageID 64.) The post regarding Program 2 states "SXS Saturdays' tonight at @sticksxstones901. Will be broadcasting the Paul vs Woodley Fight! Open from 6pm to 12am. Pull up join us for 'Fight Night at Sticks.'" (Id. at PageID 67.)

Plaintiffs have sufficiently alleged violations of 47 U.S.C. § 605.

II.     **Monetary Relief**

While the entry of default is deemed an admission of liability by the defendant, the amount of damages must be proved.  Pat's Snack Bar, 2020 WL 1923178, at *2; Antoine v. Atlas Turner, Inc., 66 F.3d 105, 110 (6th Cir. 1995) ("Where damages are unliquidated a default admits only defendant's liability and the amount of damages must be proved.") (citation omitted); Vesligaj v. Peterson, 331 F. App'x 351, 355 (6th Cir. 2009) ("Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true.") (citation omitted).

Although, as discussed above, Plaintiffs have provided evidence that Defendants aired Programs 1 and 2, there is not sufficient evidence to show that Defendants are entitled to damages for the broadcasting of Program 3.  To support damages for Program 3, Plaintiff appears to rely on a Facebook post from Jones from January 20, 2022, two days before the airing of Program 3.  (ECF No. 17-2 at PageID 69.)  One of Jones's Facebook friends commented on the post "Ya'll going to be open for the early game today?"  (Id.)  Jones responded "Yes bruh! We open at 3pm today! . . .we always showing the ufc fight!"  The comments are not dated, so it is impossible to tell whether the program being shown that night was Program 3.  Accordingly, Plaintiff is entitled to damages on its § 605(a) claim as to Programs 1 and 2, but not Program 3.

As for damages, Plaintiff seeks $2,795 in statutory damages, which is equal to the legal licensing fees Defendants should have paid to broadcast the three Programs.  (ECF No. 17-1 at PageID 48.)  Section 605 provides for a base statutory recovery between $1,000 and $10,000, at the court's discretion.  47 U.S.C. § 605(e)(3)(C)(i)(II).  "[C]ourts typically consider the price a defendant would have had to have paid to obtain the right to receive and display a broadcast, as well as the plaintiff's cost to police its broadcasting rights in the area."  Truong, 2020 WL

7014303, at *4 (quoting J & J Sports Prods., Inc. v. Holbrook, No. 17-cv-11312, 2018 WL 4688934, at *3–4 (E.D. Mich. Sept. 28, 2018)).  Courts also look at the facts of the case before them, "including the number of patrons at the time of the violation, the seating capacity of the establishment, the rate charged by the plaintiff for the broadcast, whether the defendant charged a cover to patrons or was likely to have obtained significant profits in another manner." Id. (quoting J & J Sports Prods., Inc. v. Matti, No. 13-cv-13963, 2015 WL 143932, at *4 (E.D. Mich. Jan. 12, 2015)).

Based on the record before the Court, it is difficult to determine the profits obtained as a result of airing Programs 1 and 2.  Therefore, it is fair and reasonable to award statutory damages in the amount of the licensing fees for those Programs, which amounts to $1,700.  See RPM Mgmt., 2011 WL 5389425, at *2 (observing that plaintiff did not submit expenses, if any, for its piracy investigation and awarding statutory damages for the cost of the licensing fee alone); Joe Hand Promotions, Inc. v. Pickett, No. 5:15-cv-478, 2016 WL 3668162, at *3 (N.D. Ohio July 11, 2016) (awarding base statutory damages equal to the applicable licensing fee); J & J Sports Prods., Inc. v. Zambrano, No. 4:14-cv-960, 2015 WL 3682588, at *5 (N.D. Ohio June 12, 2015) (calculating statutory damages "based on what would have been a proper licensing fee"); Joe Hand Promotions, Inc. v. Williams, No. 3:07-cv-406, 2010 WL 341513, at *2 (W.D. Ky. Jan. 22, 2010) (awarding the statutory minimum of $1,000 where the cost to defendant of lawfully obtaining a license would have been $700); Joe Hand Promotions, Inc. v. Willis, No. 5:08-cv-2786, 2009 WL 369511, at *2 (N.D. Ohio Feb. 11, 2009) (basing statutory damages on lost licensing fee).

Plaintiff also seeks enhanced statutory damages of $13,975 for Defendants' violation of 47 U.S.C. § 605.  A court may, in its discretion, award enhanced damages if it "finds that the

violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." § 605(e)(3)(C)(ii). Though the statute does not define what violations are "willful," courts in similar piracy cases have found the conduct to be willful under the statute. See, e.g., Truong, 2020 WL 7014303, at *6 (finding that intercepting and unscrambling a television signal requires an overt act and that defendants advertised their broadcasting of the program and commented on the posting about the broadcast that their cover charge was lower than another business's); Pat's Snack Bar, 2020 WL 1923178, at *5 (stating that it was "inconceivable that [Defendants] could have inadvertently decoded the scrambled signal or accidentally altered cable services to result in the unauthorized broadcast"). Here, as in Truong, the Court finds that Defendants knowingly and willfully intercepted the Program for purposes of indirect or commercial advantage or private financial gain because Plaintiff established that Defendants could not have unknowingly intercepted the Programs 1 and 2 and that Defendants promoted their broadcast of those Programs on social media.

However, Plaintiff's requested $13,975 enhancement is unsupported. When a willful violation has been found, courts in this circuit have generally awarded an enhancement that multiplies the statutory base by two. Truong, 2020 WL 7014303, at *6 (rejecting plaintiff's request for a $20,000 enhancement in favor of an award that multiplied the statutory base by two and collecting cases that did the same). The facts in this case are less severe than in Truong, where defendants advertised a cover charge for the event on their Facebook page, 2020 WL 7014303, at *6. Plaintiff does not present evidence showing that Defendants' conduct was otherwise more egregious than that in Truong (or other cases in this circuit), or that its damages approach the $13,975 it requests. Thus, Plaintiff is awarded enhanced damages in the amount of $3,400, double the amount of statutory damages.

Finally, pursuant to 47 U.S.C. § 605(e)(3)(B)(iii), a court shall award full costs, including reasonable attorneys' fees.  In this district, the Local Rules require parties to submit an affidavit or declaration of counsel detailing the number of hours spent on each aspect of the case and an affidavit or declaration from another attorney in the community, who is not otherwise involved in the case, setting out the prevailing rate in the community for similar services. LR 54.1(b)(1)–(2).  Plaintiffs have complied with the first requirement.  In an affidavit, Attorney for Plaintiff Andrew W. Shorten states that he spent six hours on this case, at a rate of $250 per hour.  (ECF No. 17-2 at PageID 59.)  However, Plaintiff has not provided an affidavit from an attorney who is not involved in the case that attests to the reasonableness of the rates.  Because of this deficiency, Plaintiff's request for attorneys' fees is **DENIED WITHOUT PREJUDICE**.  Plaintiff may refile its motion for attorneys' fees within fourteen days to bring it in compliance with this Court's Local Rules.

As for costs, to determine whether the requested expenses are compensable, the Court considers whether the particular costs are the type routinely billed by attorneys to paying clients in similar cases. In re Cardizem CD Antitrust Litig., 218 F.R.D. 508, 535 (E.D. Mich. 2003).  Shorten explains that Plaintiff incurred costs of $405 for the civil filing fee, and $110 to effectuate service.  Finding these expenses to be routine and reasonable, the court **AWARDS** $515 in costs.

Thus, Plaintiffs are **AWARDED** $5,100 in damages and $515 in costs.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion is **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs are AWARDED $1,700 in statutory damages, $3,400 in enhanced damages and $515 in costs. Plaintiff's request for attorneys' fees is **DENIED WITHOUT PREJDUICE**.

**IT IS SO ORDERED,** this 9th day of August, 2021.

> s/ Sheryl H. Lipman
> SHERYL H. LIPMAN
> CHIEF UNITED STATES DISTRICT JUDGE